## LAU v. LAU.

1. Appeal and Error—Chancery Case—Findings of Court.
   When the testimony in a chancery case is conflicting, the findings of the trial court will be upheld in the absence of a definite showing that a contrary result should have been reached.

2. Banks and Banking—Joint Deposits—Presumption as to Survivor's Ownership.
   In administrator's suit to recover funds in bank accounts in joint names of decedent and his daughter-in-law, where plaintiff failed to prove decedent did not intend to vest title to the joint deposit in defendant daughter-in-law as his survivor, the statutory presumption that she became owner as survivor prevailed and justified dismissal of bill (3 Comp. Laws 1929, § 12063, as amended by Act No. 286, Pub. Acts 1937).

3. SAME—JOINT DEPOSITS—PRESUMPTIONS—EVIDENCE.

Reasonably clear and persuasive proof is required to overcome the statutory presumption that joint deposits become the property of the survivor of those jointly named as depositors (3 Comp. Laws 1929, § 12063, as amended by Act No. 286, Pub. Acts 1937).

4. SAME—JOINT DEPOSITS—STATUTES—NATIONAL BANKS.

Statute providing that when a bank deposit is made in names of two or more persons, payable to either or survivor, it shall become the property of such persons as joint tenants and that the making of deposit in such form shall be prima facie evidence of intention of such depositors to vest title therein in survivor applies to deposits in national banks (3 Comp. Laws 1929, § 12063, as amended by Act No. 286, Pub. Acts 1937).

5. SAME—NATIONAL BANKS SUBJECT TO STATE LAWS.

National banks are subject to the laws of the State in which they are located so long as such laws do not interfere with the purposes for which national banks were created, tend to impair or destroy their efficiency as Federal agencies, nor conflict with the paramount laws of the United States.

Appeal from Wayne; Murphy (Thomas J.), J. Submitted October 20, 1942. (Docket No. 39, Calendar No. 42,148.) Decided January 4, 1943.

Bill by William A. Lau, administrator *de bonis non* of the estate of Charles R. Lau, deceased, against Paul Lau and Martha Lau to require surrender of the proceeds of joint bank accounts to the estate, and for other relief. Bill dismissed. Plaintiff appeals. Affirmed.

*Bruno L. Blinstrub* and *James T. Rice,* for plaintiff.

*Harold Goodman* and *Edwin R. Monnig,* for defendants.

NORTH, J. At the time of his death August 31, 1938, Charles R. Lau had several bank accounts held

jointly in the names of himself and his daughter-in-law, Martha Lau. He was survived by three sons and one daughter. Plaintiff, one of his sons, as the administrator *de bonis non* of the estate of deceased, has brought suit in chancery, charging that the funds on deposit in these bank accounts belonged to Charles Lau, and that he did not intend to vest title to them in the survivor named in the joint accounts, Martha Lau, and that the funds belong to the estate. Plaintiff appeals from a decree dismissing the bill, of complaint.

Defendants Martha Lau and her husband, a son of Charles Lau, concede some of the deposits were made with money belonging to the father, and probably all were of his money; but they assert that under 3 Comp. Laws 1929, § 12063, as amended by Act No. 286, Pub. Acts 1937 (Comp. Laws Supp. 1940, § 12063, Stat. Ann. 1942 Cum. Supp. § 23.303), there exists a presumption of ownership in the survivor which plaintiff has not overcome. In part the statute reads:

"When a deposit has been made, or shall hereafter be made, in any banking institution transacting business in this State, in the names of two or more persons, payable to either or the survivor or survivors, such deposit or any part thereof or any interest or dividend thereon and any additions thereto, made by any one of the said persons, shall become the property of such persons as joint tenants. * * *

"The making of the deposit in such form shall, in the absence of fraud or undue influence, be prima facie evidence, in any action or proceeding, to which either such banking institution or surviving depositor or depositors is a party, of the intention of such depositors to vest title to such deposit and the additions thereto in such survivor or survivors."

Charles Lau had retired from business about 1926 and had lived with defendants for 19 years next preceding his death in 1938, at the age of 79. On May 8, 1931, he executed a will naming Martha Lau his executrix. In it, he provided that certain of his children should receive specific bequests to equalize advancements he had made to certain of the others and that each child should share equally in the residue of his estate. Shortly after making his will he started the first of the joint accounts. He also, with the exception of one piece of property which he later sold, deeded his real estate ·in substantially equal shares to the four children, reserving a life estate.

Plaintiff and one other son and daughter testified that their father had told each of them at various times that he intended to divide his estate evenly among all four children. They also rely on the fact that the daughter shortly before her father's death asked Martha Lau if she thought the father would loan the daughter $75 and that Martha replied, "I don't know. You know how the old man is with *his* money." Plaintiff urges this is an admission by Martha Lau that Charles Lau intended to retain ownership of the deposits. In addition to the above, one Samuel Black, an old friend of Charles Lau, testified that on several occasions, the latest about a week before the father died, he told Black that his property was to be divided equally among the four children.

Defendants did not testify, but they produced one witness, Lena Molzhan, a neighbor of Charles Lau, who testified he told her in regard to a question concerning his property two or three years before his death: "Them couple of dollars what I got belong to my daughter-in-law Martha." She further

testified that he told her he could not get along with his daughter but that Martha took care of him.

The trial court found:

"To hold that the joint bank account was created for the purpose of more easily distributing the money possessed by the deceased at the time of his death, under the evidence in this case, would be mere speculation. The fact that he (Charles Lau) was a man of considerable business experience, with a mind of his own, fully possessed of all his mental faculties up to the time of his death, and his physical faculties until a month before his death, is conclusive to my mind that he knew what he was doing when the joint bank account was opened, and it was his intention, as shown by the fact that he opened such an account, that whatever was left in said account at the time of his death was to go to Martha.

"The testimony not having established any fiduciary or confidential relationship between the parties, the burden of proof is upon the plaintiff to show a contrary intention, which they have wholly failed to do."

We cannot say from the record that the decree of the trial court is erroneous. All of the testimony given by plaintiff and the one other son and daughter, and also the statement by Martha Lau to the daughter, were purely conjectural. No statements by Charles Lau specifically pertaining to his bank accounts were offered in evidence which would in any way indicate his intention. The equal distribution of his real estate does not prove he intended to distribute his bank deposits equally among all his children. Likewise, his provision for equal distribution of the residue of his estate does not prove plaintiff's contention since deceased also left some insurance to which this provision might well have been intended to apply. The daughter

testified that he had told her he had $10,000 in the bank at one time, but that in itself did not prove anything material in this suit. Nor is it at all decisive of this case that at the time of his death deceased did not possess enough property aside from these joint bank accounts to pay in full the special bequests made in his will. Outside of the statements just above referred to, each side introduced but one witness on the question of Charles Lau's intent and these two witnesses contradicted each other in that one witness testified Charles Lau said he intended to leave his property to all the children equally and the other testified he said in effect the money he had belonged to Martha. "When the testimony is conflicting, the findings of the trial court will be upheld in the absence of a definite showing that a contrary result should have been reached." *Gindorff* v. *Gindorff*, 295 Mich. 469, 471; *Donaldson* v. *Donaldson*, 134 Mich. 289. Plaintiff failed to prove that Charles Lau did not intend to vest title to the joint deposits in Martha Lau as his survivor. The defendants, having the benefit of the statutory presumption (3 Comp. Laws 1929, § 12063, as amended by Act No. 286, Pub. Acts 1937), must prevail.

The foregoing conclusion is strengthened by the following facts. Charles Lau was a business man. He obviously knew the nature and purpose of bank deposits of the character here involved. He had previously had a like account in the name of himself and one of his sons; but evidently for reasons of his own he later changed that account to one in his individual name. In opening the first of the bank accounts here in controversy Charles Lau changed an account solely in his name to the account jointly in himself and Martha with provision for right of survivorship. He was a somewhat secretive type of person and adverse to interference with his pri-

vate affairs. Whatever property he left to pass as a part of his estate did go in substantially equal shares to his four children. Reasonably clear and persuasive proof, stronger than appears in this record, is required to overcome the statutory provision that deposits of the character here involved "become the property of" the survivor of the joint depositors. Otherwise there would be no security or certainty as to the rights of such surviving depositors.

We are not in accord with plaintiff's contention that this statutory provision as to joint bank accounts does not apply to deposits in a *national* bank. Unlike provisions in some other States, the Michigan statutory provision is not limited to banking institutions of any particular type; but instead it applies to "any banking institution transacting business in this State." (See statute above quoted.) Though the precise question was not raised in *Meigs* v. *Thayer*, 289 Mich. 680, we therein applied the Michigan statute to a deposit in a national bank. And *Starr, Attorney General,* v. *Schram,* 24 Fed. Supp. 888, citing *First National Bank in St. Louis* v. *Missouri,* 263 U. S. 640 (44 Sup. Ct. 213, 68 L. Ed. 486), holds that national banks are subject to the laws of the State in which they are located so long as such laws do not interfere with the purposes for which national banks were created, tend to impair or destroy their efficiency as Federal agencies, or conflict with the paramount law of the United States. See, also, *Attorney General* v. *Michigan National Bank,* 298 Mich. 417 (136 A. L. R. 458); 9 C. J. S., Banks & Banking, p. 1064, § 567; 7 Am. Jur., Banks, p. 33, § 13. The Michigan statute here involved applies to deposits of this character in national banks located in this State.

The decree of the trial court must be affirmed. Costs to defendants.

CHANDLER, STARR, BUTZEL, and BUSHNELL, JJ., concurred with NORTH, J. BOYLES, C. J., and WIEST and SHARPE, JJ., concurred in the result.