FIRST FEDERAL SAVINGS & LOAN ASSOCIATION
*v.* SAVALLISCH.

1. BANKS AND BANKING—JOINT ACCOUNTS—SURVIVOR'S TITLE—EVIDENCE.
    The statutory presumption of ownership in survivor of persons in whose name a joint account was opened with a savings and loan association *held*, not rebutted by evidence in association's suit interpleading such survivors in several accounts and the guardian, and later administrator, of the depositor's estate (CL 1948, § 487.703).

2. GUARDIAN AND WARD—TITLE TO PROPERTY.
    A guardian has no title to the ward's property, his authority to use the proceeds being limited by the necessities of the ward.

3. SAME—ELECTION BETWEEN ALTERNATIVE OR INCONSISTENT CLAIMS.
    The privilege of a ward to elect between alternative or inconsistent rights or claims does not pass to the guardian of the estate of the incompetent ward.

4. BANKS AND BANKING—JOINT DEPOSITS—TITLE OF SURVIVOR.
    Reasonably clear and persuasive proof is required to overcome the statutory presumption that joint savings deposits become the property of the survivor of the joint depositors (CL 1948, § 487.703).

Appeal from Wayne; McCree, Jr. (Wade H.), J. Submitted June 8, 1961. (Docket No. 32, Calendar No. 49,027.) Decided September 22, 1961.

Bill of interpleader by First Federal Savings and Loan Association of Detroit against Harry D. Saval-

REFERENCES FOR POINTS IN HEADNOTES

[1, 4]  7 Am Jur, Banks § 425.
[2]  25 Am Jur, Guardian and Ward § 107.
[3]  25 Am Jur, Guardian and Ward § 101 *et seq.*

lisch, special guardian, and Betty Crooks, general guardian, and continued in the name of Harry D. Savallisch, special administrator of the estate of Julia M. Armstrong Luebner, deceased, and against Carol MacDonald, Jean Khuri, Ferdinand Harold Savallisch, Grace L. Babo and others, to determine rights to funds on deposit. Summary decree determining individuals named on joint accounts established by deceased entitled to funds therein, less certain allowances for care and keep of deceased while under guardianship. Harry D. Savallisch, special administrator, appeals. Affirmed.

*Clarence A. Reid* (*Clarence A. Reid, Jr.,* of counsel), for defendant Savallisch, special administrator.

*Garan, Lucow & Miller* (*Albert A. Miller,* of counsel), and *Francis M. Dodge,* for defendant Khuri.

*R. Noble Wetherbee,* for defendant Ferdinand Harold Savallisch.

*Hudson & Hudson* (*Clarence L. Hudson,* of counsel), for defendant Babo.

*Nat Gursten,* for defendant MacDonald and others.

Carr, J. In November, 1956, Mrs. Julia Luebner, who was at the time 78 years of age, deposited in the First Federal Savings and Loan Association of Detroit a sum slightly in excess of $90,000. Two weeks later she transferred $55,000 of said amount to 6 joint accounts, each such account naming herself and another as depositors and being payable to either or the survivor. The persons thus favored included a nephew, a grandnephew, 3 grandnieces and a sister-in-law of Mrs. Luebner. Subsequently some changes were made in the accounts and prior to May

15, 1959, the total number thereof was increased to 8. The total amount, including interest as of June 30, 1959, was $83,387.57.

It is conceded that none of the persons named with Mrs. Luebner as a joint holder made any withdrawals from or deposits in an account. Mrs. Luebner retained the passbooks in her possession. No question is raised as to her mental competency to transact business during the period in question.

On May 15, 1959, at an *ex parte* hearing in probate court Harry D. Savallisch was appointed special guardian of Mrs. Luebner, it being claimed at the time that the latter had become incompetent. Acting as special guardian Mr. Savallisch withdrew the 8 joint accounts established by Mrs. Luebner and transferred them to a new account in the First Federal Savings and Loan Association in his name as special guardian. On June 24, 1959, Mrs. Luebner was formally adjudicated a mental incompetent by the probate court and a general guardian was appointed. Apparently some dissatisfaction existed on the part of the majority, at least, of the persons named in the deposits created by Mrs. Luebner. Suit was instituted in the circuit court of the county against the general guardian and injunctive relief sought. As a result of such action plaintiff was enjoined until further order of the court from issuing funds to the general guardian out of the so-called "joint tenancy accounts."

In view of the situation existing plaintiff savings and loan association filed a bill of interpleader in the circuit court of Wayne county, setting forth therein the situation with reference to the accounts and asking that the claimants be required to interplead and to present their respective claims. An order to show cause why relief of the nature sought should not be granted was issued, a hearing was had thereon, and an order was entered requiring the defendants

named in the bill to interplead as prayed by plaintiff and to file their respective claims within 15 days of the entry of such order. Plaintiff was further directed to transfer the money in the account created by the special guardian of Mrs. Luebner to an account to be designated as the "Julia M. Armstrong Luebner Interpleader Fund", to be held by the plaintiff association subject to the further order of the court. It was further ordered that the passbook, or other evidence of the account, should be deposited with the clerk of the Wayne county circuit court. The defendants named in the bill were restrained from instituting or maintaining any actions at law or in equity upon their respective claims and from making any further claims against the plaintiff savings and loan association.

In accordance with the order of the court claims were filed in the interpleader suit and a pretrial hearing was had. The legal issue presented in the case on the record as made was summarized by the circuit judge conducting the hearing as follows:

"Can a fiduciary of a mentally incompetent person terminate a joint bank account with right of survivorship created by the mental incompetent prior to the time of her adjudication as such?"

Motions for summary decree were filed by appellees herein. It does not appear that answers or affidavits of merits were filed in opposition thereto by the general guardian or by the special administrator of the estate of Mrs. Luebner who deceased on October 7, 1960. Following the death of Mrs. Luebner and under date of November 2, 1960, an order was entered in circuit court substituting the special administrator, appellant herein, in place of the general guardian.

The case was submitted in the trial court on briefs and oral arguments of counsel for the respective

parties, and on November 18, 1960, a decree was entered apportioning the money remaining in the fund in question among the joint depositors. The trial court further found that at the time of the establishing of the various accounts Mrs. Luebner was mentally competent to handle her affairs and that the special guardian was without right or authority to withdraw the funds from said accounts. From the decree entered the special administrator has appealed on behalf of the estate of Mrs. Luebner.

Deposits in a banking institution, of the character here in question, are subject to the provisions of CL 1948, § 487.703 (Stat Ann 1957 Rev § 23.303), which reads as follows:

"When a deposit shall be made, in any bank by any person in the name of such depositor or any other person, and in form to be paid to either or the survivor of them, such deposits thereupon and any additions thereto, made by either of such persons, upon the making thereof, shall become the property of such persons as joint tenants, and the same together with all interest thereon, shall be held for the exclusive use of the persons so named and may be paid to either during the lifetime of both, or to the survivor after the death of 1 of them, and such payment and the receipt or acquittance of the same to whom such payment is made shall be a valid and sufficient release and discharge to said banking institution for all payments made on account of such deposits prior to the receipt by said bank of notice in writing not to pay such deposit in accordance with the terms thereof.

"When a deposit has been made, or shall hereafter be made, in any banking institution transacting business in this State, in the names of 2 or more persons, payable to either or the survivor or survivors, such deposit or any part thereof or any interest or dividend thereon and any additions thereto, made by any 1 of the said persons, shall become the property

of such persons as joint tenants, and the same shall be held for the exclusive use of the persons so named and may be paid to any 1 of said persons during the lifetime of said persons or to the survivor or survivors after the death of 1 of them, and such payment and the receipt or acquittance of the same to whom such payment is made shall be a valid and sufficient release and discharge to said banking institution for all payments made on account of such deposits prior to the receipt by said bank of notice in writing not to pay such deposit in accordance with the terms thereof.

"The making of the deposit in such form shall, in the absence of fraud or undue influence, be prima facie evidence, in any action or proceeding, to which either such banking institution or surviving depositor or depositors is a party, of the intention of such depositors to vest title to such deposit and the additions thereto in such survivor or survivors."

Unquestionably Mrs. Luebner might have withdrawn the moneys deposited by her in the joint accounts at any time prior to her becoming mentally incompetent. She did not do so but, on the contrary, increased some of the accounts and created new ones. There is nothing in the record before us to suggest that her purpose in making the deposits in the manner indicated was to promote her own convenience or well-being. It is a matter of fair inference that she intended each person named as a joint depositor with herself, if such person survived, to become the absolute owner of the account. In other words, the presumption created by the final sentence of the section of the banking law above quoted has not been rebutted in the instant case. Such method of final disposition of funds is not uncommon. It is significant that the persons who were made joint depositors with herself by Mrs. Luebner were, in the main, her closest relatives or friends whom she wished to remember in the manner suggested. Such

accounts served the same purpose as a testamentary disposition and it may be assumed that for some reason Mrs. Luebner favored such method. A somewhat analogous situation was involved in *Jacques* v. *Jacques,* 352 Mich 127.

Counsel representing the respective parties on the appeal to this Court have discussed at some length the law relating to the authority of a fiduciary of a mentally incompetent to exercise the right of election that the ward might have exercised if incompetency had not occurred. A case involving facts of the precise nature of those in the instant proceeding has not been heretofore submitted to this Court. Counsel for appellant has cited *In re Schweier,* 357 Mich 191. In that case the guardian of a mentally incompetent person turned over savings bonds issued by the United States government, which were owned jointly by the ward and her daughter, to the co-owner. The incompetent recovered and in a proceeding in circuit court it was determined that the guardian should be surcharged because of the delivery of the bonds to the daughter as co-owner. This Court affirmed an order referring the matter to the probate court for the purpose of ascertaining the exact interest of each co-owner in and to the bonds. The decision scarcely supports the position of the appellant here but inferentially does suggest a somewhat obvious limitation on the authority of a guardian in dealing with the ward's property.

On behalf of appellees it is insisted that in instances where a right of election would exist on the part of the ward, if competent, the guardian may not act. Attention is called to 44 CJS, Insane Persons, § 49, pp 134, 135, where it is said:

"One appointed guardian of the estate of an incompetent ordinarily is limited to taking charge of and handling such estate, and may not act in respect

of other and personal matters affecting the incompetent. The guardian or committee of a mental incompetent does not become his *alter ego,* and is not empowered by virtue of his office to act for the incompetent in matters involving the exercise of a personal discretion so as to change an act performed by the incompetent while mentally normal, nor may such guardian or committee waive or terminate any rights of the incompetent without court approval."

The Wisconsin supreme court in *Boehmer* v. *Boehmer,* 264 Wis 15 (58 NW2d 411), had before it a situation very similar to that presented in the case at bar. There the guardian of a mentally incompetent, who had a joint account with his wife in a bank, caused the account to be transferred to the name of the incompetent by his guardian. Citing prior decisions of the court, it was said (p 21):

"Regarding appellant's contention that John P. Boehmer, as guardian, succeeded to the rights of Jacob Boehmer, as depositor, to withdraw an account which had been deposited in the names of said depositor 'and/or' his wife, it must be realized that if Jacob Boehmer had not become incompetent, he could have elected to withdraw the account or allow it to remain until his death. In such a situation there is applicable the rule that where a ward has a personal privilege to elect between alternative or inconsistent rights or claims, the privilege of election does not pass to the guardian of the estate of the ward, and the guardian cannot make the election."

A similar conclusion was reached by the supreme court of Massachusetts in *Drain* v. *Brookline Savings Bank,* 327 Mass 435 (99 NE2d 160), where it was said (p 441):

"There is no merit in the contention of the plaintiff that, even though there was a completed gift, Miss Sullivan could have withdrawn the account during her life and her temporary guardian was like-

wise entitled to withdraw it. A guardian has no title to the property of the ward. The guardian's authority to use the proceeds of this account was limited by the necessities of the ward. In the absence of any showing that the use of this account was necessary to meet the needs of the ward, the bank was under no duty to pay over to the temporary guardian the whole or any part of it. *Johnson* v. *Nourse,* 258 Mass 417, 419, 420 (155 NE 457); *Coolidge* v. *Brown,* 286 Mass 504, 508 (190 NE 723)."

In *In re Rasmussen's Estate,* 147 Misc 564 (264 NYS 231), a like decision was rendered. There, in June, 1904, a deposit was made in trust for the benefit of the widow of a deceased nephew of the depositor. In 1930 the depositor was adjudged an incompetent and under the New York statute a committee was duly appointed for her. Apparently some withdrawals from the trust fund had been made by the depositor, leaving a balance therein somewhat in excess of $1,000. The committee undertook to transfer the balance in the fund to a general account in his name as fiduciary. In holding that the committee did not have the authority to change the deposit in the manner indicated, and citing prior decisions, it was said (p 566):

"Certain it is that the committee does not by reason of his appointment become the *alter ego* of the incompetent, since it has been held that rights of election possessed by the incompetent cannot be exercised by a committee."

The court further quoted from *In Matter of Wainman's Estate,* 121 Misc 318, 320 (200 NYS 893), as follows:

" 'A careful reading of these decisions leads to the conclusion that they apply to ministerial acts; the protection of the estate; the collecting of the assets; and the caring for the incompetent according to his station in life; but that it does not confer upon the

committee a discretionary power to change an act performed by the incompetent before he was afflicted with the disability and deprive the beneficiary of that act and of a right conferred by the incompetent when he was mentally qualified to confer it, and thus perhaps prevent the performance of an act that the incompetent would insist on having performed if he had retained his natural faculties.' "

In the case of *Howard* v. *Imes,* 265 Ala 298 (90 So 2d 818, 62 ALR2d 1086), the court discussed the legal proposition here involved at some length, citing numerous decisions from other States and concluding that under the general rule the guardian of an incompetent person cannot withdraw funds in a joint account except for the ward's necessities, the reason being that such withdrawal would be the exercise of a personal right of the ward. It may be noted in passing that in the case now before this Court 2 withdrawals from the fund in order to meet personal expenses of Mrs. Luebner and provide for her proper care were duly authorized by the circuit judge. No question is presented as to the propriety of such action. In each instance the release of funds was made on the application of the general guardian.

As before stated, there is nothing in the case now before this Court on which to base an inference or conclusion that Mrs. Luebner created the joint deposits in question for her own convenience and well-being, or for any reason other than to carry out a desire to aid those whom she caused to be joined with her as joint depositors. A similar situation obtained in *Lau* v. *Lau,* 304 Mich 218. In that case it appeared that Charles R. Lau had several bank accounts held jointly in the names of himself and his daughter-in-law. Following his death 1 of his 3 sons was appointed as administrator *de bonis non* of the estate and brought suit in equity charging that the funds in such accounts belonged to the estate. The

bill of complaint was dismissed in circuit court and this Court affirmed the decree. In so deciding the following significant comment was made (p 224):

"Reasonably clear and persuasive proof, stronger than appears in this record, is required to overcome the statutory provision that deposits of the character here involved 'become the property of' the survivor of the joint depositors. Otherwise there would be no security or certainty as to the rights of such surviving depositors."

In *Mitts* v. *Williams*, 319 Mich 417, the statutory presumption of ownership of a joint account by the survivor was recognized but was held to have been overcome by competent proof indicating that the deposit was made for the sole benefit and convenience of the party whose funds were deposited. A similar situation existed in *Pence* v. *Wessels*, 320 Mich 195, which appellant has cited. As indicated, we do not find such proof in the present controversy.

The decree of the trial court is affirmed. Appellees may have costs.

DETHMERS, C. J., and KELLY, TALBOT SMITH, BLACK, EDWARDS, KAVANAGH, and SOURIS, JJ., concurred.