156 Mich. App. 1 (1986)
401 N.W.2d 288
In re WRIGHT ESTATE
WRIGHT
v.
WHITE
Docket No. 81045.
Michigan Court of Appeals.
Decided November 4, 1986.
John R. Carney, P.C. (by John R. Carney), for petitioner.
Beier, Howlett, Hayward, McConnell, McCann, Jones, Kingsepp & Shea (by James L. Howlett), for respondents.
Before: T.M. BURNS, P.J., and BEASLEY and R.M. PAJTAS,[*] JJ.
BEASLEY, J.
This case involves a dispute in regard to the final account of petitioner, Justice M. Wright, who was appointed guardian of Mabel Laveta Wright, now deceased, and conservator of her assets while she was alive. Petitioner appeals from an opinion and order entered by Judge Frank S. Szymanski of the Wayne Probate Court which determined title to property and allowed expenses in connection with the decedent's estate.
The decedent lived in Detroit. Her surviving relatives were her brother, petitioner Justice M. Wright, who was seventy-eight years old when these proceedings were commenced, and two nephews. The decedent was two years younger than petitioner. Petitioner lived in North Bay, Ontario, Canada. In September, 1979, some friends of the decedent called petitioner and told him that he had better come to Detroit to look after his sister. Petitioner came to Detroit in the latter part of September and, when he arrived, the decedent's mental condition was not very good. He stayed in Detroit until mid-December, when he was made the decedent's guardian, and then took the decedent *4 to North Bay with him. The decedent died in October, 1980. Petitioner claimed that two joint bank accounts in his and decedent's names belonged to him alone. The heirs-at-law, respondents, claimed that those funds belonged to the estate.
Petitioner filed a final account entitled the "First Amended Account" and petition in support of the first amended account in which he requested reimbursement for various expenses. In the petition, he also requested that the two joint bank accounts in his and decedent's names, which had been listed as joint assets in the inventory of the first amended account, be paid to him as the surviving owner of the assets. Those assets amounted to $81,844.91.
In his opinion, the probate judge, after making findings of fact and drawing conclusions of law, concluded that petitioner was not entitled "to receive assets from the guardianship estate based upon his claim of joint ownership with rights of survivorship." He said that he found competent evidence to rebut what he described as the statutory presumption of ownership under MCL 487.703; MSA 23.303. The evidence to which he referred was the testimony of petitioner that the money in the joint accounts was entirely that of the decedent, that he recognized it as her money, and that he withdrew it from the joint account and put it in the "guardian's account" solely for the purpose of making it available for her needs.
The record indicates that between 1975 and 1978, prior to her mental incompetency, the decedent had opened two joint accounts with rights of survivorship with petitioner. When she became mentally unable to take care of herself, petitioner, then in his late seventies, came from his home in North Bay, Ontario, to help her. This was in September, 1979, and, in December, it became *5 necessary for him to be appointed her guardian and the conservator of her estate. In December, 1979, and January, 1980, petitioner withdrew the funds from the joint accounts and placed them in one guardianship account.
Around that time, January of 1980, petitioner took the decedent to his home in North Bay where, as indicated, she died in October, 1980.
When petitioner terminated the joint accounts by withdrawing the funds, he was both the guardian of the decedent and a joint tenant with rights of survivorship with the decedent. By his own testimony, he did not believe that he had the right to take the joint accounts and convert them to his own use. When he withdrew the funds from the joint accounts, he put them in one bank under his attorney's jurisdiction, with a special arrangement to wire funds to North Bay for the decedent's benefit as needed.
When the sums were withdrawn from the joint accounts, the joint accounts ceased to exist and MCL 487.703; MSA 23.303 was no longer applicable. In fact, there was a considerable period of time between termination of the joint accounts and the decedent's death.
When the funds were withdrawn from the joint accounts, and deposited in the guardianship account, they were commingled with other money of the decedent. In fact, petitioner withdrew the balances in five other bank accounts that the decedent had in addition to the certificates of deposit which were held jointly with petitioner. During the guardianship, some moneys were withdrawn and used for the decedent's maintenance.
When the decedent died, the money in the guardianship account became payable to the fiduciary of her estate. Petitioner had no authority to create a new joint tenancy. As previously indicated, *6 the joint tenancy between the decedent and petitioner had ceased to exist when petitioner withdrew the funds from the joint accounts and commingled them with other guardianship funds in the guardianship account.
Thus, we conclude that the withdrawal of the money from the joint accounts served to terminate the joint ownership with rights of survival. The placing of the money in the guardianship account made those funds subject to the statutes regarding guardianship. The guardian had no authority to make a will for his ward. Neither could the guardian control or direct disposition of his ward's property upon the ward's death. Consequently, since the joint bank accounts had been terminated and since the money was in the possession of the guardian, upon the decedent's death that property passed under the laws of descent and distribution. This conclusion is based on the representation that the decedent left no last will and testament. For these reasons, petitioner was not entitled to a sum equal to the amount that had earlier been in the joint accounts.
The dissent reaches an opposite conclusion, first reasoning that petitioner, as guardian, was without power to terminate the joint tenancy. This premise ignores the fact that, in addition to being guardian, petitioner was also the joint tenant with the decedent. As joint tenant, petitioner had the power to legally withdraw the funds from the joint accounts. That was exactly the reason for creating the joint accounts, namely, to make it possible for petitioner to get at some funds quickly on the decedent's behalf in the event of an emergency, without the necessity of legal proceedings. Of course, that is what happened. When the decedent became unable to take care of herself and her own *7 affairs, petitioner, among other things, withdrew the funds in the joint accounts.
Since petitioner clearly had the power in his capacity as joint tenant to withdraw all or any part of the funds in the joint accounts, he likewise clearly had the power to terminate the joint tenancy. He did so by withdrawing all the joint funds and depositing them in a single guardianship account.
The dissent cites First Federal Savings & Loan Ass'n v Savallisch, 364 Mich 168; 110 NW2d 724 (1961), as authority for the proposition that the guardian of a mentally incompetent person lacks the power to terminate a joint tenancy with rights of survivorship created by a joint bank account. In fact, the dissent says that Savallisch prohibits a guardian from withdrawing money from a joint bank account. Most cases would not go that far, but would permit funds to be withdrawn for the incompetent's necessities. But, under either interpretation, the rule is inapplicable here where one person, petitioner, was both guardian and joint tenant. Because he was joint tenant, petitioner clearly and obviously had the right and power to withdraw funds from the joint accounts and to terminate a joint tenancy to which he was a party. He did not have to be guardian to enjoy these rights and powers, and the fact that he was guardian did not diminish his rights and powers as joint tenant. Thus, since the joint tenancy no longer existed and since Savallisch is distinguishable and does not control, petitioner is not entitled to take the funds as a surviving joint tenant.
While this controls disposition, comment is in order regarding the other rationale of the dissent. For example, the dissent claims that the only reason the decedent created the joint accounts was to do some estate planning on her own. The dissent *8 does not believe that there was any convenience factor in the decedent's creation of the joint accounts. We assume that, in creating the joint accounts, the decedent obtained and filed with the bank the usual signature card from petitioner which authorized the bank to honor withdrawal of funds by either petitioner or herself. In this case, the only witness was petitioner. There is nothing in his testimony to indicate that he thought the decedent was indulging in estate planning.
The fact is, the record is silent as to the decedent's intentions. One conjecture as to her reasons and motivations is as good as another. We would not draw the same inferences as has the dissent. Neither did the probate judge who found as a fact that petitioner's testimony overcame the presumption of ownership. We are not prepared to say that we would have found differently had we been sitting on the probate court.
The dissent says, "It must be kept in mind that petitioner has two roles in this litigation. He has both purely personal interests and he has interests which arise from his position as conservator. The evidence in this case is clear that petitioner acted in his capacity as conservator when he withdrew the sums of money from the various accounts and placed them into one account."
While we disagree that there is evidence that petitioner acted as conservator in withdrawing the funds, we do not believe that this proposition is relevant or controlling. The question is whether petitioner had the power to withdraw funds from the joint accounts. Only if petitioner lacked power to withdraw funds from the joint accounts, so as to make his withdrawal of such funds unlawful and a nullity, may the reasoning of the dissent be sustained. This is because the reasoning of the dissent is that (1) even though the funds in the joint *9 accounts were withdrawn and the joint accounts closed, and (2) even though the withdrawn funds were commingled with other funds of the decedent, and (3) even though many months passed between the date when the funds were deposited in the guardianship account and the date when the decedent died, nevertheless, legally they remained joint funds that would pass on the decedent's death to petitioner as surviving joint tenant.
The sine qua non of petitioner's position is that withdrawal of funds from the joint accounts was unlawful and of no force and effect so that the funds remained as joint funds with rights of survivorship. Consequently, it is only if we conclude that petitioner lacked power to withdraw the funds that this reasoning has any validity. But, as indicated, petitioner could, as a joint tenant with the decedent, lawfully withdraw the joint funds and terminate the joint accounts.
Contrary to the premise of the dissent, petitioner could and did, as a joint tenant, make the joint funds available to maintain his sister. Neither do we agree that, as conservator, he could not use joint funds for the decedent's maintenance.
The remaining prop in the reasoning of the dissent is the application of the rule in Savallisch. But, as previously indicated, in Savallisch it was not a joint tenant who withdrew the funds, and there was no commingling of the joint funds nor any possibility that some had already been used for the donor's benefit. See an interesting analysis of this kind of issue in 63 Mich L Rev 629, 652 (1965). Savallisch neither applies nor controls here.
The final issue for consideration by this Court is whether the trial court made adequate findings of fact and properly exercised its discretion when it disallowed part of the expenses claimed by petitioner *10 in the final accounting. We find no error in this regard.
MCL 700.541; MSA 27.5541 indicates that a fiduciary is to be allowed the amount of his reasonable expenses incurred in the administration of the estate and shall also have such compensation for his services as the court in which the fiduciary's accounts are settled deems to be just and reasonable. In determining the compensation to be awarded for services of the fiduciary, the court must determine the reasonable value of the services performed. In re Baird Estate, 137 Mich App 634, 637-638; 357 NW2d 912 (1984). The burden of proof is on the fiduciary claiming compensation, and he must satisfy the court that the services rendered to the estate were necessary and the charges, therefore, are reasonable. The claimant's failure to present records concerning his services is usually weighed against him. The trial court's allowance of charges in favor of a fiduciary is within its discretion and will be reversed only where there has been an abuse of that discretion. In awarding attorney's fees, the probate court should evaluate the worth of the services rendered based on the evidence presented. In re Weaver Estate, 119 Mich App 796, 799; 327 NW2d 366 (1982). The probate court's award of attorney fees for services rendered to a decedent's estate will be overturned only for an abuse of discretion. We find no abuse of discretion in this case. Furthermore, the trial court's findings of fact were adequate under GCR 1963, 517.1, now MCR 2.517(A). The trial court concluded that some of the amounts claimed by petitioner for his services and the attorney fees were excessive for the services rendered. There was no error.
Affirmed.
*11 R.M. PAJTAS, J., concurred.
T.M. BURNS, P.J. (dissenting).
Because I disagree with the majority's conclusion that petitioner is not entitled to the $81,844.91 in issue, I dissent.
After Mabel Wright's death, the probate court requested that petitioner, who was the decedent's guardian and conservator of her estate, file a final account. When petitioner filed the final account, he listed the $81,844.91 as joint assets, instead of estate assets. He thereafter requested that the assets be paid to him individually as the surviving owner.
Petitioner's claim to the assets arises from the status in which the money was held by the decedent before petitioner was made the decedent's guardian. At the time of petitioner's arrival in Detroit, the decedent had held differing amounts of money in various accounts at banks throughout Detroit. Two of those accounts were joint accounts in the name of Mabel and Justice Wright. In December of 1979 and January of 1980, petitioner withdrew the funds from the various banks and transferred them to an account in one bank. Thus, at the time of these proceedings, all of the funds were located in one account and the joint accounts no longer existed. However, petitioner asserts that the amounts which were taken from the two joint accounts now belong to him alone. I agree.
I believe that the trial court incorrectly interpreted the law in regard to a conservator's authority. Moreover, the trial court's finding that the statutory presumption of MCL 487.703; MSA 23.303 was overcome was clearly erroneous. See MCR 2.613(C).
MCL 487.703; MSA 23.303 states:
When a deposit shall be made, in any bank by any person in the name of such depositor or any *12 other person, and in form to be paid to either or the survivor of them, such deposits thereupon and any additions thereto, made by either of such persons, upon the making thereof, shall become the property of such persons as joint tenants, and the same together with all interest thereon, shall be held for the exclusive use of the persons so named and may be paid to either during the lifetime of both, or to the survivor after the death of one of them, and such payment and receipt or acquittance of the same to whom such payment is made shall be a valid and sufficient release and discharge to said banking institution for all payments made on account of such deposits prior to the receipt by said bank of notice in writing not to pay such deposit in accordance with the terms thereof.
When a deposit has been made, or shall hereafter be made, in any banking institution transacting business in this state, in the names of two or more persons, payable to either or the survivor or survivors, such deposit or any part thereof or any interest or dividend thereon and any additions thereto, made by any one of the said persons, shall become the property of such persons as joint tenants, and the same shall be held for the exclusive use of the persons so named and may be paid to any one of said persons during the lifetime of said persons or to the survivor or survivors after the death of one of them, and such payment and the receipt of acquittance of the same to whom such payment is made shall be a valid and sufficient release and discharge to said banking institution for all payments made on account of such deposits prior to the receipt by said bank of notice in writing not to pay such deposit in accordance with the terms thereof.
The making of the deposit in such form shall, in the absence of fraud or undue influence, be prima facie evidence, in any action or proceeding, to which either such banking institution or surviving depositor or depositors is a party, of the intention of such depositors to vest title to such deposit and the additions thereto in such survivor or survivors.
*13 In connection with this statute, the Supreme Court has addressed the issue of whether a fiduciary of a mentally incompetent person can terminate a joint bank account created by the mental incompetent prior to the time of her adjudication as such. The Supreme Court addressed that issue in First Federal Savings & Loan Ass'n v Savallisch, 364 Mich 168, 173; 110 NW2d 724 (1961). In that case, the Supreme Court stated:
Unquestionably Mrs. Luebner [the depositor, later declared incompetent] might have withdrawn the moneys deposited by her in the joint accounts at any time prior to her becoming mentally incompetent. She did not do so but, on the contrary, increased some of the accounts and created new ones. There is nothing in the record before us to suggest that her purpose in making the deposits in the manner indicated was to promote her own convenience or well-being. It is a matter of fair inference that she intended each person named as a joint depositor with herself, if such person survived, to become the absolute owner of the account. In other words, the presumption created by the final sentence of the section of the banking law above quoted has not been rebutted in the instant case. Such method of final disposition of funds is not uncommon. It is significant that the persons who were made joint depositors with herself by Mrs. Luebner were, in the main, her closest relatives or friends whom she wished to remember in the manner suggested. Such accounts served the same purpose as a testamentary disposition and it may be assumed that for some reason Mrs. Luebner favored such method.
The Supreme Court went on to affirm the trial court, which had held that the guardian was without right or authority to withdraw the funds from joint accounts. The Supreme Court, referring to In *14 re Rasmussen's Estate, 147 Misc 564; 264 NYS 231 (1938), continued, stating:
There, in June, 1904, a deposit was made in trust for the benefit of the widow of a deceased nephew of the depositor. In 1930 the depositor was adjudged an incompetent and under the New York statute a committee was duly appointed for her. Apparently some withdrawals from the trust fund had been made by the depositor, leaving a balance therein somewhat in excess of $1,000. The committee undertook to transfer the balance in the fund to a general account in his name as fiduciary. In holding that the committee did not have the authority to change the deposit in the manner indicated, and citing prior decisions, it was said (p 566):
"Certain it is that the committee does not by reason of his appointment become the alter ego of the incompetent, since it has been held that rights of election possessed by the incompetent cannot be exercised by a committee."
The court further quoted from In the Matter of Wainman's Estate, 121 Misc 318, 320 (200 NYS 893 [1923]), as follows:
"`A careful reading of these decisions leads to the conclusion that they apply to ministerial acts; the protection of the estate; the collecting of the assets; and the caring for the incompetent according to his station in life; but that it does not confer upon the committee a discretionary power to change an act performed by the incompetent before he was afflicted with the disability and deprive the beneficiary of that act and of a right conferred by the incompetent when he was mentally qualified to confer it, and thus perhaps prevent the performance of an act that the incompetent would insist on having performed if he had retained his natural faculties.'"
In the case of Howard v Imes, 265 Ala 298 (90 So 2d 818, 62 ALR2d 1086 [1956]), the court discussed *15 the legal proposition here involved at some length, citing numerous decisions from other States and concluding that under the general rule the guardian of an incompetent person cannot withdraw funds in a joint account except for the ward's necessities, the reason being that such withdrawal would be the exercise of a personal right of the ward. It may be noted in passing that in the case now before this Court 2 withdrawals from the fund in order to meet personal expenses of Mrs. Luebner and provide for her proper care were duly authorized by the circuit judge. No question is presented as to the propriety of such action. In each instance the release of funds was made on the application of the general guardian.
As before stated, there is nothing in the case now before this Court on which to base an inference or conclusion that Mrs. Luebner created the joint deposits in question for her own convenience and well-being, or for any reason other than to carry out a desire to aid those whom she caused to be joined with her as joint depositors. [364 Mich 168, 176-177.]
I believe that Savallisch controls the outcome in this case. In finding that petitioner was not entitled to the money, the trial court held: (1) the petitioner when acting as conservator had the authority to withdraw the funds from the joint accounts; and (2) regardless of petitioner's ability to withdraw the funds, petitioner had no right of survivorship in the accounts because the statutory presumption of ownership created by MCL 487.703; MSA 23.303 was overcome by evidence presented in this case. I believe that the trial court erred in regard to each conclusion.
As indicated by the Supreme Court in Savallisch, supra, a guardian or conservator does not have the authority to withdraw funds in joint accounts except for purposes of providing necessary *16 care for the incompetent.[1] The conservator does not have the discretionary power to change acts performed by the incompetent before she was afflicted in order to deprive beneficiaries of that act of a right conferred by the incompetent. I find nothing in the Revised Probate Code which would lead to a different conclusion. See MCL 700.484; MSA 27.5484. While a conservator is provided with wide powers under the probate code, he must exercise such powers in light of his capacity as conservator. The funds in this case were already deposited in a bank and there was no necessity for rearrangement into a new or different account. Thus, petitioner, as conservator, erred and exceeded his authority in removing the funds from the joint accounts.
Because petitioner, as conservator, exceeded his authority, petitioner, as the survivor of the joint account, is entitled to the assets. MCL 487.703; MSA 23.303 creates a presumption that the decedent intended to vest title to the deposits in petitioner. There is nothing in this case on which to base an inference or conclusion that the decedent created the joint deposits for her own convenience and well-being or for any reason other than a desire to aid her brother upon her death. Her brother was never informed of the accounts and *17 lived many miles away from his sister. He discovered the joint accounts when he arrived to act as her guardian and conservator of her estate.[2]
Even though the money is no longer in the joint bank accounts, petitioner is still entitled to the funds. See Savallisch, supra. Petitioner, as conservator, erred by removing the assets. Technically, he should have corrected this error by placing the assets back into the joint accounts. If the accounts were in existence and he had done so, the statutory presumption would control and title to the deposits would vest in petitioner as the survivor. However, such an act is now impossible and would be useless. The assets should therefore be turned over directly to petitioner. The assets should not appear as estate assets in the final account provided by petitioner as conservator.
It must be kept in mind that petitioner has two roles in this litigation. He has both purely personal interests and he has interests which arise from his position as conservator. The evidence in this case is clear that petitioner acted in his capacity as conservator when he withdrew the sums of money from the various accounts and placed them into one account. Petitioner testified that he considered the money as belonging to his sister. His testimony clearly indicated that when he transferred the money to the "guardian's account" he was intending to make money available for his sister's needs. He clearly acted in his capacity as conservator in doing so. There is absolutely no indication that he treated the money as *18 belonging to him in his individual capacity. Regardless of whether or not he, as an individual, had the power to withdraw the money and use it for his own purposes, the evidence indicates that he did not.
To hold that petitioner in his individual capacity is not entitled to the money which he would otherwise be entitled to simply because he also had a role as guardian or conservator is inequitable. His error in judgment as guardian should not be held against him as an individual.
Finally, I agree with the majority that the trial court made adequate findings of fact and properly exercised its discretion when it disallowed part of the expenses claimed by the conservator.
I would therefore reverse the decision of the trial court in part and affirm in part.
NOTES
[*] Circuit judge, sitting on the Court of Appeals by assignment.
[1] The trial court erred in its interpretation of the Savallisch case. The trial court distinguished the case on the ground that the guardian therein had withdrawn the money from the joint accounts while the depositor therein, Mrs. Luebner, was still competent. The trial court misinterpreted the facts of Savallisch. The guardian therein withdrew the money from the accounts after the ward was formally adjudicated to be a mental incompetent.

Moreover, I note that the majority misinterprets my opinion by suggesting that joint funds cannot be withdrawn for the incompetent's necessities. Such an interpretation is contrary to the explicit and clear wording of this opinion which indicates that there is an exception for providing necessary care for the incompetent. These funds could obviously have been used for necessities if no other funds were available. However, there is no indication that other available funds were not sufficient to provide for Mabel Wright's needs.
[2] The trial court clearly erred in determining that petitioner's testimony overcame the presumption of ownership. As indicated, there was absolutely no evidence to establish that the funds were deposited for Mabel Wright's convenience. Her brother was not located nearby and was unable to provide a convenience to her by withdrawing funds on her behalf. Rather, the only conclusion from the evidence is that she intended to provide a benefit for her brother upon her death.