*In re* WRIGHT ESTATE

WRIGHT v WHITE

Docket No. 79829. Argued November 4, 1987 (Calendar No. 5). Decided June 6, 1988.

Justice M. Wright, guardian and conservator of the estate of his sister, Mabel Laveta Wright, a disabled adult, consolidated funds from his sister's bank accounts, including two joint accounts of which he was a joint owner with full rights of survivorship. After Mabel died intestate, Justice filed an account and inventory of her estate in the Wayne County Probate Court, petitioning the court to award him the funds in the original joint accounts. Burt H. White and Elsie M. Wright, personal representative of the estate of William R. Wright, deceased, objected, challenging the petitioner's claim. The court, Frank S. Szymanski, J., denied the petitioner's claim. The Court of Appeals, BEASLEY and PAJTAS, JJ. (T. M. BURNS, P.J., dissenting), affirmed, holding that the petitioner's withdrawal of the money from the joint accounts terminated the joint ownership (Docket No. 81045). The petitioner appeals.

In an opinion by Justice CAVANAGH, joined by Chief Justice RILEY and Justices LEVIN, BRICKLEY, ARCHER, and GRIFFIN, the Supreme Court *held:*

The petitioner exceeded his authority as conservator in closing the accounts. However, he did not lose his status of joint owner with rights of survivorship and is still entitled to the funds that had been in the joint accounts. Nothing in the record indicates that the decedent named petitioner as joint owner for any reason other than to provide him a benefit upon her death.

1. A presumption of ownership is created when a person opens a bank account and names a joint owner with rights of survivorship. In this case, the probate court clearly erred in ruling that the presumption was rebutted. No evidence was presented that the decedent opened the joint accounts for any

REFERENCES

Am Jur 2d, Guardian and Ward §§ 20-22, 61-64, 110, 149, 150, 160.
See the Index to Annotations under Guardian and Ward.

reason other than to provide a benefit for her brother upon her death.

2. A conservator is a fiduciary, appointed to exercise power over the estate of a protected person and limited by the duty to act reasonably to accomplish the purpose of the appointment. In this case, the petitioner was acting as conservator of his sister's estate when he withdrew funds from the joint accounts. However, the withdrawal of all the funds terminated the joint tenancy and changed the nature of the accounts. Therefore, the petitioner exceeded his authority in closing the bank accounts opened by the decedent before she had been declared incompetent. Although the petitioner exceeded his authority, he did not lose his status as joint owner when he closed the accounts, and is entitled to the funds.

Reversed and remanded.

Justice BOYLE, concurring in the result, stated that the petitioner terminated the joint tenancy when he withdrew the funds. As a joint owner, he exercised his personal right to close the accounts. The fact that he was his sister's guardian did not diminish his rights and powers as a joint tenant; nor does it follow that the placement of the funds in the conservator account constituted a gift to his sister's estate. The result reached by the majority is equitable and fairly carries out the donor's intent.

156 Mich App 1; 401 NW2d 288 (1986) reversed.

GUARDIAN AND WARD — CONSERVATORS — BANK ACCOUNTS — JOINT OWNERSHIP.

The conservator of the estate of a disabled adult who was a joint owner with the disabled adult of certain bank accounts opened by the ward prior to the disability exceeded his authority by closing and consolidating the accounts, but did not lose the status of joint owner and was entitled to the funds upon the death of the ward where it was shown that the accounts were intended as a benefit for the conservator upon the death of the ward (MCL 487.703, 700.484[3]; MSA 23.303, 27.5484[3]).

*John R. Carney (Sean P. Kavanagh,* of counsel) for the petitioner.

*Beier, Howlett, Hayward, McCann, Jones, Kingsepp & Shea* (by *James L. Howlett)* for the respondents.

CAVANAGH, J. The single issue in this case is

whether a person who is both conservator of a disabled adult and a joint owner with the disabled adult of certain bank accounts loses his status of joint owner with rights of survivorship when he closes the joint accounts and deposits the funds in a conservator's account opened to consolidate the disabled adult's assets.

I

In September, 1979, petitioner Justice M. Wright was summoned to Detroit from his home in North Bay, Ontario, Canada, by friends of his sister, Mabel Laveta Wright. At that time Mabel was seventy-two years old and living alone. Her physical and mental health had deteriorated to the point that she could not care for herself or manage her financial affairs. When petitioner arrived in Detroit, he consulted an attorney and then initiated probate proceedings to appoint a guardian and conservator for his sister. In the meantime he tended his sister's needs.

According to petitioner's testimony, his sister had never discussed her finances with him. Petitioner found several bank books and unpaid bills while sorting through her papers. Two of the bank books were for accounts on which petitioner was named joint owner with full rights of survivorship. One account was a certificate of deposit purchased by Mabel on March 5, 1975; the other account had been opened by Mabel on February 2, 1978.[1]

Petitioner was appointed his sister's guardian and the conservator of her estate on December 6, 1979. He attempted to find a nursing home in the Detroit area to care for his sister, but given her mental condition, none would admit her. Peti-

---

[1] The funds in both accounts amounted to $81,844.99.

tioner finally moved her to North Bay, where he found a home willing to take her.

Petitioner returned to Detroit and on the advice of counsel consolidated his sister's funds in one bank, Manufacturers Bank of Livonia, so petitioner could easily have money wired to North Bay for his sister's needs. Several bank accounts were transferred to the one bank, among them the two joint accounts that petitioner's sister had opened in both their names.[2] As his sister's conservator, petitioner purchased a savings certificate and opened a savings account and a checking account.

On October 12, 1980, Mabel Laveta Wright died intestate. As part of his duties as conservator, Justice M. Wright filed an account and inventory of his sister's estate. Respondents Burt White and Elsie Wright, both heirs at law, objected to the first accounting, as well as to an amended account and inventory that was later filed. Specifically, they objected to Justice M. Wright's petition in which he claimed that as surviving owner of the joint assets in the estate he should be awarded those assets.

A hearing was held, and the probate judge concluded that petitioner was "not entitled to receive any assets from the guardianship estate based upon his claim of joint ownership with rights of survivorship . . . ." The probate judge found that the statutory presumption of joint ownership under MCL 487.703; MSA 23.303 had been rebutted by petitioner's testimony that the money in the joint accounts belonged to his sister.

Petitioner appealed to the Court of Appeals, which affirmed in a split decision.[3] The majority concluded that petitioner's withdrawal of the

---

[2] Petitioner also transferred the funds from several bank accounts held in decedent's name alone.

[3] 156 Mich App 1; 401 NW2d 288 (1986).

money from the joint accounts terminated the
joint ownership with rights of survival, and that
therefore petitioner was not entitled to a sum
equal to the amount that had earlier been in the
joint accounts.[4] The dissent disagreed and con-
cluded that petitioner was acting as conservator
when he withdrew the funds from the joint ac-
counts; however, as conservator, the petitioner
lacked the authority to close the accounts and had
therefore erred. The dissent would have awarded
petitioner in his role as joint tenant with rights of
survivorship the funds that had been in the joint
accounts.[5]

We granted petitioner's application for leave to
appeal. 428 Mich 873 (1987).

II

Under MCL 487.703; MSA 23.303, a presumption
of ownership is created when a person opens a
bank account and names a joint owner with rights
of survivorship:

> The making of the deposit in such form shall, in
> the absence of fraud or undue influence, be prima
> facie evidence, in any action or proceeding, to
> which either such banking institution or surviving
> depositor or depositors is a party, of the intention
> of such depositors to vest title to such deposit and
> the additions thereto in such survivor or survivors.

This Court has characterized the type of evidence
required to rebut the presumption of ownership:

> Reasonably clear and persuasive proof, stronger
> than appears in this record, is required to over-
> come the statutory provision that deposits of the

---

[4] *Id.,* p 6.
[5] *Id.,* pp 11-18.

character here involved "become the property of" the survivor of the joint depositors. Otherwise there would be no security or certainty as to the rights of such surviving depositors. [*Lau v Lau,* 304 Mich 218, 224; 7 NW2d 278 (1943).]

We find that the probate judge clearly erred in ruling that the statutory presumption of ownership was rebutted in this case.[6] No evidence of decedent's intent was presented to the probate court. However, it appears that decedent opened the joint accounts for no other reason than that she intended to provide a benefit for her brother upon her death. At that time the brother did not live nearby and was therefore unable to withdraw funds on her behalf for her convenience. In addition, he was unaware of the joint accounts and did not discover them until he began proceedings to be appointed his sister's guardian and the conservator of her estate. We find nothing in this case to support the probate judge's conclusion that the statutory presumption was rebutted.

III

The main issue in this case is whether petitioner lost his status as joint owner with rights of survivorship when he closed the joint accounts. Our determination of that issue depends upon the capacity in which petitioner acted when he withdrew the funds. At the time petitioner had three roles: guardian of his sister, conservator of her estate, and joint owner with rights of survivorship in the accounts. Consequently, petitioner represented his sister's interest as guardian and conservator, while having personal interests of his own as joint tenant.

---

[6] See MCR 2.613(C).

On the basis of the record before us, we find that the petitioner was acting in his capacity as conservator when he withdrew the funds from the joint accounts.[7] Petitioner testified that at the time he did not intend to claim the money as his own. Rather, he intended to make the money more readily available for his sister's needs. By transferring his sister's bank accounts to a single bank where he had opened conservator's accounts in his sister's name, petitioner could have money wired more easily to North Bay when his sister required it. Therefore, petitioner was acting as conservator of his sister's estate when he withdrew the funds from the joint accounts, and we find nothing in the record that indicates otherwise.

IV

Despite petitioner's altruistic intentions in closing the joint bank accounts to consolidate his sister's assets, as conservator he did not have the authority to do so.

A conservator is a fiduciary,[8] appointed to exercise powers over the estate of a protected person.[9] Those powers,[10] however, are not absolute. In exercising them a conservator has the duty to "[act] reasonably in efforts to accomplish the purpose for which he or she was appointed . . . ."[11]

Although a conservator has the power to "[c]ol-

[7] From the bank's perspective petitioner was able to withdraw the funds from the accounts because of his status as joint owner. However, that fact has little bearing on petitioner's intention when he did so. Furthermore, the understanding of the bank personnel is irrelevant in determining petitioner's own intent in closing the accounts.

[8] MCL 700.5(2)(a); MSA 27.5005(2)(a).

[9] MCL 700.3(5); MSA 27.5003(5). A conservator is sometimes referred to as the "guardian of the estate."

[10] A conservator's powers are listed in MCL 700.484; MSA 27.5484.

[11] MCL 700.484(3); MSA 27.5484(3).

lect, hold, and retain assets of the estate,"[12] he
may not change the nature of joint accounts cre-
ated by the disabled adult before the adult was
declared incompetent.[13] In this case petitioner's
withdrawing all the funds from the joint accounts
terminated the joint tenancy and thus changed the
nature of the accounts. Therefore, we find that
petitioner exceeded his authority in closing the
joint bank accounts opened by decedent before she
was declared incompetent.

v

We hold that under the facts of this case peti-
tioner did not lose his status of joint owner with
rights of survivorship when he closed the joint
accounts to consolidate his sister's assets in conser-
vator's accounts. Although petitioner erred by ex-
ceeding his authority as conservator, he is still
entitled to the funds that had been in the joint
accounts.[14] Nothing in the record indicates that the
decedent named petitioner as joint owner for any
reason other than to provide him a benefit upon
her death. Therefore, the decisions of the Court of
Appeals and probate court are reversed. We re-
mand this case to the probate court to enter an
order consistent with this opinion.

RILEY, C.J., and LEVIN, BRICKLEY, ARCHER, and
GRIFFIN, JJ., concurred with CAVANAGH, J.

BOYLE, J. (*concurring*). I concur in the result. In
my view, however, petitioner terminated the joint

---

[12] MCL 700.484(3)(a); MSA 27.5484(3)(a).

[13] See *First Federal Savings & Loan Ass'n v Savallisch,* 364 Mich
168; 110 NW2d 724 (1961).

[14] We agree with the dissenting opinion of Judge T. M. BURNS in
this case that petitioner's error in judgment as a conservator should
not be held against him as an individual. See 156 Mich App 18.

tenancy when he withdrew the funds. *First Federal Savings & Loan Ass'n v Savallisch,* 364 Mich 168; 110 NW2d 724 (1961), is distinguishable. The rationale of *Savallisch* is the general rule that a guardian does not have authority to exercise the personal rights of the ward to alter the nature of the deposits, *Drozinski v Straub,* 383 So 2d 301, 304 (Fla App, 1975). Accepting that petitioner as conservator did not succeed to his ward's personal right, it cannot be disputed that as a joint owner petitioner had a personal right to close the accounts which he could and did exercise. I therefore agree with the Court of Appeals that withdrawal in and of itself served to terminate the joint ownership with rights of survival. As that Court observed, petitioner "did not have to be guardian to enjoy these rights and powers, and the fact that he was guardian did not diminish his rights and powers as joint tenant," 156 Mich App 1, 7; 401 NW2d 288 (1986).

It does not necessarily follow that the placement of the funds in the conservator account constituted a gift to the estate.[1]

In this unique circumstance, when petitioner placed his own funds in the joint account, the record[2] reflects that he intended to hold the money

[1] I am unable to accept respondent's argument that the record requires a finding petitioner intended to make a gift of these funds to decedent.

[2] The Court of Appeals correctly concluded that the statutory presumption of ownership of joint accounts, MCL 487.703; MSA 23.303, became inapplicable when the funds were withdrawn from the joint accounts. Contrary to the probate court's finding that petitioner's conduct and testimony rebuts any presumption of joint ownership, the statutory presumption of ownership of joint accounts under MCL 487.703; MSA 23.303 concerns the depositor's intent when the deposit is made and admissions by the donee that the account was understood to be the property of the donor during his lifetime frequently have been viewed as not controlling. See Wellman, *The joint and survivor account in Michigan—Progress through confusion,* 63 Mich L R 629, 637 (1965).

in trust for his ward to be used in the event she needed it. Since there is no question that petitioner acted in good faith, and on the advice of an attorney, or that the remainder of the estate was more than sufficient for the needs of the ward, I believe the majority has reached an equitable result which fairly carries out the donor's intent when the joint accounts were created.